## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RITA HALL**

                Plaintiff,

vs.                                       Hon.

                                       Case No.: 21-

**TROY DESIGN & MANUFACTURING CO.**
a Michigan company,
**UNITED OF OMAHA LIFE
INSURANCE COMPANY,**
a Nebraska company,

                Defendants.

_____/

## PLAINTIFF'S COMPLAINT

Plaintiff, RITA HALL, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., states her Complaint against the above-named Defendants as follows:

## COUNT I:
## JURISDICTION AND VENUE

1)    This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil

actions to recover benefits due under the terms of an employee welfare benefit plan.

2)    The Troy Design and Manufacturing Co. Health and Welfare Benefit Plan ("the Plan") consists of, among other coverages, long-term disability, group Term Life insurance, and group Voluntary Term Life insurance.   The Plan is sponsored by Defendant Troy Design & Manufacturing Co. ("TDM"), which entity is also the named Plan Administrator.

3)    Defendant United of Omaha Life Insurance Company ("United") underwrites the Plan and further acts as the Claims' Administrator for the benefit of TDM employees, including Paull Hall, deceased.

4)    29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials.  Plaintiff ("Mrs. Hall") has been denied access to a meaningful and/or full and fair pre-suit appellate review.  This matter is ripe for juridical review.

5)    Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

**COUNT II:**
**NATURE OF ACTION**

6)     This is a claim involving the rights and responsibilities under the Plan, specifically $79,000.00 in group Term Life benefits due pursuant to Group Policy Number GLUG-BFGN **(Ex. 1)**, and $20,000.00 in group Voluntary Term Life benefits due pursuant to Policy Number GVTL-BFGN **(Ex. 2)**, which Policies United issued to TDM, the Policyholder, and covered all eligible TDM employees, including Paul Hall as of the date of his death.

7)     This is an action against TDM (Plan Sponsor and Administrator) and United (Claims' Administrator) for equitable relief, including, but not limited to, surcharge, pursuant to ERISA, Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which alleges breach of fiduciary duties and seeks all available and appropriate compensation, including interest, costs, attorneys' fees, and a $110.00 per-day penalty beginning September 30, 2021 going forward due to TDM's failure to provide all relevant documentation as requested and required by 29 U.S.C. §1132(c).

8)     This is an action against United brought pursuant to ERISA, Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) for $99,000.00 in group Term and Voluntary Term Life benefits.   Mrs. Hall's claims are pled in the

alternative pursuant to § 502(a)(1)(B) and § 502(a)(3) of the ERISA statute (29 U.S.C. §1132).

## COUNT III:
## THE PARTIES

9)   Mrs. Hall is 64 years-of-age.  She is the widow of Paul Hall who began working for TDM on May 21, 2012 as a Production Supervisor. Mrs. Hall is a resident of Brighton, Michigan.

10)   TDM is a Michigan corporation conducting business in the State of Michigan, including the Eastern District.  It has designated The Corporation Company, 40600 Ann Arbor Rd., E., Suite 201, Plymouth, MI 48170-4675, to act as its resident agent for service of process.

11)   United is a Nebraska company authorized to conduct insurance-related business in the State of Michigan, including the Eastern District.   It has designated the Corporation Service Company, 2900 West Road, Suite 500, East Lansing, MI 48823, to act as its resident agent for service of process.

12)   During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to his employment, Paul Hall, deceased, received coverage under the Plan as a

"participant," as defined by 29 U.S.C. § 1002(7). This claim relates to the payment of group Term and Voluntary Term Life insurance benefits and other available relief that is due under the above-described Plan.

## COUNT IV:
## <u>GENERAL ALLEGATIONS</u>

13)    Mr. Hall began working for TDM on May 21, 2012 as a Production Supervisor.  As a benefit of his employment, among other coverages, he received company-paid short-term disability, long-term-disability, and $79,000.00 in group Term Life insurance. Upon information and belief, Mr. Hall paid premiums to maintain $20,000.00 in group Voluntary Term Life insurance.  Mr. Hall's insurance coverages appear to have begun on January 1, 2015 through February 28, 2021 or August 1, 2021. *(Ex. 1 of 11/2/21 Administrative Appeal).*

14)    Mr. Hall was diagnosed with acute myeloblastic leukemia on or about April 1, 2019 and, according to TDM's September 12, 2019 Employer Statement, he stopped working on April 5, 2019.

15)    After Mr. Hall's last day of work, he submitted his short and long-term disability applications to TDM and United, which claims were

approved; STD benefits were paid April 16, 2019 through October 14, 2019, and LTD benefits commenced on October 15, 2019.

16)    On September 27, 2019, United advised Jackie Cook (TDM HR and Labor Relations Rep.) that it had approved Mr. Hall's LTD claim effective April 9, 2019.   United also directed TDM to discuss Mr. Hall's continuing life insurance coverages with Mr. Hall:

> **\*ATTENTION\***
> **THIS EMPLOYEE MAY HAVE OTHER EMPLOYER SPONSORED**
>
> **INSURANCE COVERAGE, INCLUDING LIFE INSURANCE, THAT MAY BE IMPACTED BY HIS OR HER WORK AND/OR DISABILITY STATUS.  IT IS THE RESPONSIBILITY OF THE EMPLOYEE AND EMPLOYER TO VERIFY THE REQUIREMENTS FOR CONTINUING COVERAGE UNDER OTHER INSURANCE (INCLUDING LIFE INSURANCE) WHILE THE EMPLOYEE IS NOT ACTIVELY WORKING.  YOU AND/OR THE EMPLOYEE MAY NEED TO TAKE IMMEDIATE ACTION TO CONTINUE COVERAGE UNDER OTHER LINES OF INSURANCE.  *PLEASE IMMEDIATELY REVIEW YOUR PLAN DOCUMENTS WITH YOUR EMPLOYEE TO UNDERSTAND HIS OR HER RIGHTS FOR CONTINUATION OF LIFE INSURANCE OR OTHER COVERAGE, INCLUDING CONVERSION OR PORTABILITY*.**

*(Ex. 2 of 11/2/21 Administrative Appeal).* (emphasis added).

17)    On September 30, 2019, United advised Mr. Hall that it had approved his LTD claim effective October 15, 2019.  This letter also advised

Mr. Hall that he needed to contact TDM to discuss then existing life insurance coverages:

> You may have other employer sponsored insurance coverage, including life insurance, that may be impacted by your disability status.  Please review your plan documents and consult with your employer to understand your rights for continuation of coverage including conversion or portability.

*(Ex. 3 of 11/2/21 Administrative Appeal).*

18)     Given TDM's lack of knowledge of the group Term Life and group Voluntary Term Life Policies, it did not, nor would have, provided accurate information to Mr. Hall regarding his rights under both Policies and ability to continue those coverages.

19)     Shortly after Mr. Hall's death, Mrs. Hall submitted her claim to United for processing.  TDM also completed a Proof of Death Claim Form and, in relevant part, answered Question 11 as follows:   "[Q]: Date premium for the above deceased has been paid through.  [A]: **He should have waiver of Premium**."   *(Ex. 5 of 11/2/21 Administrative Appeal).* (emphasis added).

20)     In an undated internal note, a United representative wrote:

> According to the information received from Troy Design & Manufacturing Co. last day of active work was April 08, 2019.

**His coverage continued under continuation of insurance for injury or sickness provision with premium payment until April 30, 2020.  Since he was over age 60 when he became totally disabled, he was not eligible to continue the insurance under continuation of insurance for total disability waiver of premium.**

**We have no record of receiving or approving a conversion or portability application.  Therefore, since his coverage under policy GLUG-BFGN and GVTL-BFGN ended on April 30, 2020 there was no coverage in force on his date of death July 24, 2021 and the claim for benefits must be denied**.

*(Ex. 6 of 11/2/21 Administrative Appeal).* (emphasis added).

21)    On or about July 29, 2021, an unknown United representative wrote:

*****CLAIM DENIED 12:36 PM 07/29/2021 called employer 734-738-2297 asking a callback 1:48 PM 07/29/2021 received a call back from Rebecca 734-738-2297 she said the employee still showing active on the system, I told her is because they are still paying premium for him, she said we should not be billing for him since they terminated him, **responded he was not terminated and after the 12 months illness he should have port or converted, she said they sent him the letter, but she *assumed* he was on waiver of premium and she told the family he had coverage.  Advised her he didn't qualify for waiver because he was over age 60 when he became disabled.  She said she told the family he had coverage and she is not telling them**.  Advised we will let his wife know claim is not payable.

3:08 PM 07/29/2021 called Rita Hall advised the claim was denied because Last day active work was April 08, 2019.  The coverage continued under continuation of insurance for injury

or sickness provision 12 months and he had the option for conversion, he didn't qualify for waiver because he was over age 60.  Advised I will mail and email letter denial to her tomorrow.

*(Ex. 6 of 11/2/21 Administrative Appeal).* (emphasis added).

22)    On July 29, 2021, 3:45 p.m., TDM (Rebecca Finazzo) emailed

select United and TDM representatives as follows:

MOO Team,
I have a major issue regarding an employee that passed away this week and was on long term disability.  The employee is Paull Hall.  When the family called me earlier this week, I saw in ADP that he no longer had enrollments and then checked the **Moo website to see if he still had coverage *due to the waiver of premium* and it showed he had coverage**.

I received a call from Amanda that stated he was not eligible due to the contract **(the only thing I was aware of and listed in benefits guide was reduced coverage at age 70 and there is something about becoming disabled before age 60 and covered until age 70 with waiver but nothing that I saw about ineligible for waiver if over age 60 when disabled)** and his age by when he became disabled and she verified that we were still paying premiums for him as well.  I have already told his family that he had $99,000 total with Basic and Voluntary *assuming* he had waiver of premium since he still had coverage on your site and nothing in ADP.  I confirmed that I removed the coverage on 3/1/21 in ADP and he was no longer reported after the 3/4/21 file to Mutual.   He is still on the 8/1/21 bill and showing coverage.  **I would not know if he was accepted for waiver so I must *assume* when the coverage is still on the website**.  ***He should have been*** removed and ***notified that he no longer had life insurance*** (the family believed he still did as well).  **I was told he would have had to**

> **port it after 12 months, _did someone notify him_?**  I
> have to for terms but not aware he was not approved for
> waiver of premium.  It should have been also been caught as
> an error on the files from the EDI team that he had coverage
> on your end and not being reported after 3/4/21 from ADP.
> **Let me know if we need to have a call regarding this error**.  I
> have also attached screenshots of ADP, the bill and the Moo
> website that showed he was covered.  When I checked
> Monday it stated he was still active now it states something
> about him being termed 8/1/21 now that you received the
> claim.  Thank you and let me know the next steps.
> Rebecca

 *(Ex. 7 of 11/2/21 Administrative Appeal).* (emphasis added).

23)     On  July  30,  2021,  1:25  p.m.,  Kelly  Jorgenson  (United)

responded to Ms. Finazzo's (TDM) July 29, 2021 email as follows:

> Hi Rebecca,
> Thank you for bringing this to our attention.  We are currently
> looking into both the claim handling and the EDI files that have
> been received.  We will be back in touch.
> Sincerely,
> Kelly Jorgensen, GBDS

 *(Ex. 7 of 11/2/21 Administrative Appeal).*

24)     United  formally  denied  Mrs.  Hall's  claim  via  written

correspondence  dated  July  30,  2021.  *(Ex.  8  of  11/2/21  Administrative*

*Appeal).*

25)    On August 3, 2021, 7:46 a.m., Ms. Finazzo (TDM) emailed Ms.

Jorgenson (United) and other United and TDM representatives asking for an

update:

> Hello Kelly,
> Looking for an update.  I spoke with the family Friday night and
> they left me a message yesterday when I was out and as you
> can imagine would like to know the status as they were
> counting on that money.  The family spoke to Amanda as well
> last week and they said they feel that they are being gaslighted
> by her and was waiting on information from her.  Can
> someone reach out to them as well from Mutual of Omaha.
> Thank you
> Rebecca

*(Ex. 7 of 11/2/21 Administrative Appeal).*

26)    On August 3, 2021, 6:40 p.m., Ms. Jorgenson (United) emailed

Ms. Finazzo (TDM) the following explanation:

> Good afternoon Rebecca,
> My apologies for the delay, I was out of the office yesterday as
> well.   Here's a recap of the information I have gathered:
>
> **We denied the Life claim for Paul Hall (921208008802) July
> 29th.  Mr. Hall's last day of Active Work was April 8, 2019.
> His Basic and VTL coverage was continued under the
> 'Continuation of Insurance for Injury or Sickness' policy
> provision.  Based on his date of birth and date of disability
> (April 9, 2019), he was ineligible for Life Waiver of Premium,
> which requires employees to be under the age of 60 at the
> time they became Totally Disabled.  Coverage should have
> continued to April 30, 2020 under the 'Continuation of**

**Insurance for Injury or Sickness' provision, <u>and then ported or converted within 31-days</u>**.

The review of the EDI file history found that the member passed as active on files dated 12/19/2018 - 2/25/2021. Following the 2/25/2021 file the member did not appear on another file and a termination date was not received via the file. Our team continued to process files and send discrepancy reports including Mr. Hall's record. He appeared on the following discrepancy reports:

- Discrepancy report dated 4/19/2021, this was sent to Jackie Cook, Rebecca Finazzo and Shelley Logan Berry

- Discrepancy report dated 5/20/2021, this was sent to Jackie Cook and Shelley Logan Berry

- Discrepancy report dated 5/27/2021, this was sent to Jackie Cook and Shelley Logan Berry

- We received a response to this Discrepancy report which advised the EE was to be on LTD Waiver of Premium.

- Discrepancy report dated 7/1/2021, this was sent to Jackie Cook and Shelley Logan Berry

- Discrepancy report dated 7/9/2021, this was sent to Jackie Cook and Shelley Logan Berry

At this point the claim denial remains based on the policy provisions. The family is welcome to complete a formal appeal. I have shared your feedback on the families experience with the manager of our life claim team. I have asked that someone reach out to the family to advise on the appeal process.

I anticipate you may have additional questions. Please let me know if we need to schedule a call to discuss further.

Sincerely,
Kelly Jorgensen, GBDS

*(Ex. 7 of 11/2/21 Administrative Appeal).* (emphasis added).

27)     On August 4, 2021, 7:59 a.m., Ms. Finazzo (TDM) responded to

Ms. Jorgenson's (United) previous email as follows:

Kelly,
Thank you for the information.  Please have me added so the
EDI file discrepancy reports are sent to me as well.  Also,
please forward the last two in July as Jackie is out and Shelley
is in our Chicago office.

For the report on 4/19 in the body of the email it stated 'I have
located a termination date on previous files, or their
termination date is a future date in our system, which will fall
off the discrepancy report on the day of that termination date.'
**So I looked at Paul's enrollment in ADP and there was not
one since 3/4/21 and _assumed_ it would be removed on
the next file (maybe didn't update in time) and he was not on
the report dated 5/2/21 that I received so I _assumed_ all was
well** and as you can see I didn't receive another report.
**Shelley forwarded me the one 5/27/21 and I wrote 'LTD
should be under waiver of premium' and received nothing
back stating he was not approved or eligible**.

My other issue is with the port/conversion.  I send out the
information to all termed employees when I do the Cobra
notice.  **How was I supposed to know that he was denied for
Waiver of Premium therefore I should send out information?**
Is there a process to notify me to send out port/conversion
information due to waiver denial or the expiration of the
sickness provision?  Do we have anyone else on LTD that does
not have waiver of premium and I should be sending out

notices?  **Did Mutual let  Paul no he was denied and no longer
had life insurance coverage?**  If so can you send that notice to
me?

Last, if you knew that he was not eligible and we were not
sending him over on the file [why] did you continue to charge
premiums for him up until the latest invoice?  As well as leave
him with coverage on your end?

Please let me know once someone from Mutual contacts the
family.  I will reach out to them as well at let them know about
the appeal process.
Rebecca

*(Ex. 7 of 11/2/21 Administrative Appeal).* (emphasis added).

28)   On   August   6,   2021,   1:04   p.m.,   Ms.   Jorgenson   (United)

responded to Ms. Finazzo (TDM) as follows:

Rebecca,
The EDI team has confirmed you've been added to the
distribution list for the discrepancy files.

Regarding the 4/19 email that stated: 'I have located a
termination date on previous files, or their termination date is
a future date in our system, which will fall off the discrepancy
report on the day of that termination date.' This explanation
was not very clear as to what our team was trying to say.  Paul
Hall still appeared on the updated discrepancy report which
meant our team did not find a term date for him or the other
remaining individuals.  Initially the report reflected 24
employees as missing and not sending termination dates.
When our analyst reviewed file history for the 24 employees it
was determined 19 of those 24 had sent a termination date via
the file feed.  We processed those terminations and

updated the report; **Paul remained on the report due to no termination date**.

The LTD Waiver of Premium went into effect November 1, 2019 for this employee.  When an LTD claim is approved, the LTD premium will  automatically be waived from the first day of the month following the end of the Elimination Period through the last day of the month in which the last benefit payment under the policy is issued.

Eligibility for Life Waiver of Premium is evaluated separately. To be eligible for the Life Waiver, employees must be Totally Disabled (e.g. because of an Injury or Sickness, completely and continuously unable to perform any work or engage in any occupation), under the age of 60 at the time they became Totally Disabled, the 9 consecutive month Elimination Period must be satisfied, and proof of Total Disability must be provided.  While I could not locate a formal Life Waiver claim submission for this employee, ***our Life claims team completed a courtesy Life Waiver review approximately 7-months from the date he ceased Active Work***.  **It was determined that he was ineligible for the Life Waiver based on his age.  *No communication or formal determination letter was issued, as during courtesy reviews, Mutual of Omaha trusts employers are aware that an employee is not eligible* (exceeds age limit, did not continue premium, employee is terminated, etc.).  A formal Life Waiver claim submission was needed for a full review with a determination letter.**

For employees who are unable to work due to an Injury or Sickness, but are ineligible for the Life Waiver, Life coverage can continue for up to 12-months under the 'Continuation of Insurance for Injury or Sickness' policy provision.  **After 12-months, the *employer is responsible* for terminating the coverage and providing portability and/or conversion rights to the employee within 31-days of when insurance ends**.  In the event that coverage was not ended and Mutual of

>Omaha becomes aware, we can work to retroactively
>terminate coverage and review for a refund in premiums.
>
>With some many moving pieces on this one, we are happy to
>jump on a call to talk through any additional questions.
>Sincerely,
>Kelly Jorgensen, GBDS

*(Ex. 7 of 11/2/21 Administrative Appeal).* (emphasis added).

29)    Mrs. Hall's daughter, Annie, emailed Ms. Finzaao (TDM) on August 6, 2021, 2:15 p.m., to ask about available next steps.  *(Ex. 7 of 11/2/21 Administrative Appeal).*

30)    On August 6, 2021, Ms. Finazzo (TDM) responded to Annie's inquiry as follows:

>I would just go ahead with the appeal process and I had a call
>with broker today and the other person at mutual they knew
>he was going to dig more but didn't seem helpful.  **In a sense
>via contract he was not eligible but I am still arguing how
>there were so many errors done and how he should have
>been notified.  I asked what the process is to let me know I
>need to send port information he didn't know.** ***My argument
>is I don't know all the fine print of contract.  They should have
>let him know since he [was] on LTD his coverage was going to
>end to contact his employer in my opinion***.  I will try to keep
>arguing but go ahead with appeal.

*(Ex. 7 of 11/2/21 Administrative Appeal).* (emphasis added).

31)    In accordance with 29 C.F.R. § 2560.503-1, on September 9, 2021, Mrs. Hall requested from United and TDM all documentation that

had been generated subsequent to Mr. Hall's last day of work.  Specifically,

Mrs. Hall requested the following materials:

> Mrs. Hall is ***requesting from UOO (as the underwriter and claim administrator) <u>and</u> Troy Design (as the sponsor and Plan administrator)*** copies of Mr. Hall's claim files that would have generated and maintained as of his last day of work or the date he submitted his LTD claim application, believed to be sometime between December 2018 and April 2019.  These file should include, but are in no way limited to: internal/SOAP/Task notes, medical records, communications by and between Paul Hall and TDM as well as UOO, correspondence, electronic mail, notes, summaries, reports authored by ANY physician, and physicians' opinions.
>
> Mrs. Hall is also requesting copies of the TDM Umbrella Plan, any and all TDM internal policies that govern the handling of LTD claims, life insurance premiums, and ongoing life insurance coverage when an insured is on approved LTD leave, and the applicable voluntary and term life policies and corresponding summary plan descriptions.

**(Ex. 3)**.

32)   On   or   about   September   16,   2021,   United   emailed

documentation  that  was  created  ***after***  Mrs.  Hall  had  submitted  her  life

insurance claim application, which included copies of the two group life

Policies that it had issued to TDM. **(Ex's 1 and 2)**.

33) Thereafter, Mrs. Hall again requested from United all of the documentation that had been generated and maintained as of Mr. Hall's last day of work, including all long-term disability-related information.

34) On October 21, 2021, United emailed the claim file that had been created in connection with Mr. Hall's April 2019 LTD claim and represented that that was the extent of available documentation for both long-term disability and life insurance.

35) In response to Mrs. Hall's request, on September 30, 2021, TDM only provided Mrs. Hall with the following Plan documents:

- 2021 Benefits New Hire Enrollment Guide;

- Your Group Term Life Benefits **(Ex. 4)**;

- Group Term Life Certificate Summary **(Ex. 4)**;

- Your Group Voluntary Term Life Benefits **(Ex. 5)**;

- Group Voluntary Term Life Certificate Summary **(Ex. 5)**;

- Group Long-Term Disability Certificate Summary; and

- Your Group Voluntary Long-Term Disability Benefits.

36) The two group life Policies that TDM provided to Mrs. Hall do not include the sections labeled **GENERAL PROVISIONS** which appear in the Policies that United provided to Mrs. Hall.

37) Other than the above-described Plan documents, TDM refused to provide any other documentation that was created, maintained and/or exchanged by and between TDM and Mr. Hall as well as TDM and United as of Mr. Hall's last day of work.

38) As the Sponsor, Policyholder, and Plan Administrator, TDM was responsible for understanding the nature of the coverages and the impact that ceasing employment was going to have on Mr. Hall's ability to maintain and continue those coverages. Specifically, both of the Policies that United issued to TDM direct the following:

> **POLICYHOLDER RESPONSIBILITIES**
> **The _Policyholder will notify_:**
>> a) **both the Insured Person and Us when the Insured Person's insurance under this Policy ends if the Insured Person ceases to be eligible for insurance under this Policy;**
>>
>> **Notice _shall_ be provided within 31 days from the date insurance ends.**
>>
>> **Notice to the Insured Person _shall_ include information about any options available to continue or obtain insurance. . . .**

**(Ex's. 1 and 2, PDF pp. 45 and 43, respectively)**. (emphasis added).

> **NOTICE TO YOU WHEN INSURANCE ENDS**
> **The _Policyholder_ is _required_ to _notify_ You when insurance under the Policy ends if:**

a) **You** or any of Your Dependent(s) **cease to be eligible for insurance under the Policy**.

**Notice _shall_ be provided within 15 days from the date insurance ends for You** or any of Your Dependent(s), **and _shall_ include information about any options available to continue or obtain insurance**.

**(Ex's. 1 and 2, PDF pp. 13 and 14, respectively)**. (emphasis added).

39)     Both Policies do not permit employees over 60 to qualify for total disability waiver of premium.  Because Mr. Hall was 62 years-of-age when he became totally disabled, he was only able to continue his life coverages under the Policies as follows:

1)     12-month *Illness exception*, with the payment of provided premiums;

2)     after 12 months, portable the coverages; or

3)     after 12 months, convert the coverages.

**(Ex. 1, PDF pp. 13-19; Ex. 2, PDF pp. 14-20[1])**

40)     TDM was operating under the false assumption that Mr. Hall's life coverages were continuing pursuant to a total disability waiver of premium and failed to notify Mr. Hall that, in fact, he would have had to

---

[1] The referenced sections describing the manner in which Mr. Hall's life coverages could have continued were present in the Policies that TDM provided to Mrs. Hall, Exhibits 4 and 5 herein.

have ported or converted his coverages if he wanted to maintain them beyond April 30, 2020.

41)    TDM failed to advise Mr. Hall that he had the right to portable or convert his life coverages.

42)    On November 2, 2021, Mrs. Hall appealed United's denial, sending copies to both United and TDM.

43)    On December 7, 2021, United formally denied Mrs. Hall's claim appeal and upheld its previous adverse decision.   In relevant part, United articulated the following errors:

> We reviewed the telephone and email communications between Mutual of Omaha representatives and the employer representatives between July 29, 2021, through August 06, 2021. During a telephone call on July 29, 2021, between the employer representative and Life claims department, **the employer expressed a misunderstanding regarding Mr. Hall's continued coverage under Waiver of Premium**. Their systems seemed to indicate he had ongoing coverage. **Further, the employer expressed an expectation that a Mutual of Omaha representative would be responsible for notifying Mr. Hall he was not eligible for Life Waiver of Premium and his right to request Conversion or Portability, which, as noted above, contradicts the terms of the policy**. . . .
>
> Based on all information received, the July 30, 2021, denial of Basic Life and VTL in the combined amount of $99,000.00 was appropriate under the terms of the policy. Mr. Hall's last day of Active Work was April 08, 2019. His Basic Life and VTL coverage continued under the Continuation of Insurance for

Injury or Sickness policy provision for 12-months through April 30, 2020. Based on Mr. Hall's date of birth and date of disability, April 09, 2019, he was ineligible for Life Waiver of Premium, which requires employees to be under the age of 60 at the time they became Totally Disabled.

As of April 30, 2020, to continue insurance, Mr. Hall was eligible to obtain insurance under the Portability or Conversion provisions within 31-days. Mr. Hall did not submit or receive approval for Conversion or Portability policies. As a result, no benefits are payable, and the claim denial has been upheld.

**(Ex. 6)**. (emphasis added).

44)   TDM has not responded to Mrs. Hall's administrative appeal.

## COUNT V:
## BREACH OF FIDUCIARY DUTY BY TDM UNDER ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

45)   TDM was responsible for understanding the group Term and Voluntary Term Life Policies' terms and conditions; it was responsible for knowing and understanding its role and what United required of it; and it was responsible for knowing and understanding the critical and specific information that United expected it to timely and accurately provide to Mr. Hall when certain events occurred.

46)   TDM did not know or understand the Policies and incorrectly assumed that Mr. Hall's coverages were continued under a total disability waiver of premium, just as his LTD coverage.

47)     TDM failed to inform Mr. Hall that because of his age at the time of total disability, he was ineligible for a waiver of premium.

48)     TDM failed to inform Mr. Hall that his coverages were going to be continued for one year under the Policies' sickness provision(s) and at the end of that year, April 30, 2020, he would either have to portable or convert those coverages if he wanted to maintain them.

49)     TDM misrepresented the coverages' actual status to Mr. Hall, upon which misrepresentation he reasonably and detrimentally relied.

50)     TDM breached its fiduciary to Mr. Hall by materially misrepresenting his coverages and by failing to act in accordance with the Policies' express terms and conditions.  Mr. Hall detrimentally relied on TDM's repeated material misrepresentations, which reliance was actual and substantial.  As a result of that breach, TDM is the direct and proximate cause of Mr. Hall's loss of group Term and Voluntary Term Life coverages under the described Policies.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A)     That this Court enter judgment in Mrs. Hall's favor against TDM and/or United and order the

immediate payment of $99,000.00 in group Term and Voluntary Term Life proceeds;

B) that this Court order TDM and/or United to pay Mrs. Hall prejudgment interest pursuant to *Horn v. McQueen*, 353 F. Supp. 2d 785 (2004) and post-judgment interest in accordance with M.C.L. § 600.6013 and 600.6455;

C) that this Court order TDM to pay Mrs. Hall up to $110.00 per day beginning September 30, 2021 through judgment for violating 29 U.S.C. §1132(c);

D) that this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

E) that Mrs. Hall recover all relief to which she may be entitled, along with the costs of litigation.

### COUNT VI:
### BREACH OF FIDUCIARY DUTY BY UNITED UNDER ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) & ACTION UNDER ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), AGAINST UNITED TO RECOVER FULL BENEFITS

51) United continued to bill and collect premiums for Mr. Hall after he stopped working.

52) United was the Claims' Administrator during November 2019 when, as a "courtesy," it sua sponte undertook a review to determine whether Mr. Hall qualified for a waiver of premium due to total disability.

53) United's review revealed that Mr. Hall did not qualify for a total disability waiver of premium because of his age, yet it elected to not

communicate that finding to TDM and/or Mr. Hall. Had United done so during November 2019, Mr. Hall would have had plenty of time to preserve and protect his group Term and Voluntary Term Life coverages.

54) United's actions directly and proximately caused the loss of Mr. Hall's coverages under ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and ERISA, Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A) That this Court enter judgment in Mrs. Hall's favor against TDM and/or United and order the immediate payment of $99,000.00 in group Term and Voluntary Term Life proceeds.

B) that this Court order TDM and/or United to pay Mrs. Hall prejudgment interest pursuant to *Horn v. McQueen*, 353 F. Supp. 2d 785 (2004) and post-judgment interest in accordance with M.C.L. § 600.6013 and 600.6455;

C) that this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

D) that Mrs. Hall recover all relief to which she may be entitled, along with the costs of litigation.

## COUNT VII:
## VIOLATION OF 29 U.S.C. §1132(c) BY TDM

55) 29 U.S.C. §1132(c) provides:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

56)     The information Mrs. Hall requested from TDM on September 9, 2021 was relevant under 29 C.F.R. § 2560.503-1 and should have been provided.

57)     Mrs. Hall's administrative appeal reiterated that TDM was obligated to turn over all of the previously requested information, yet TDM failed to respond and provide anything beyond the Plan documents, which were incomplete when compared with the Policies that United produced to Mrs. Hall.

58)     TDM's refusal to produce all of the requested and relevant information on September 30, 2021 prevented Mrs. Hall from preparing a comprehensive administrative appeal and constitutes a violation of 29 U.S.C. §1132(c).  Accordingly, Mrs. Hall is entitled to receive up to $110.00 per day beginning September 30, 2021 through judgment.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A) That this Court enter judgment in Mrs. Hall's favor against TDM and/or United and order the immediate payment of $99,000.00 in group Term and Voluntary Term Life proceeds.

B) that this Court order TDM and/or United to pay Mrs. Hall prejudgment interest pursuant to *Horn v. McQueen*, 353 F. Supp. 2d 785 (2004) and post-judgment interest in accordance with M.C.L. § 600.6013 and 600.6455;

C) that this Court order TDM to pay Mrs. Hall up to $110.00 per day beginning September 30, 2021 through judgment for violating 29 U.S.C. §1132(c);

D) that this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

E) that Mrs. Hall recover all relief to which she may be entitled, along with the costs of litigation.

*Signature page follows*

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:    <u>s/ Ilana S. Wilenkin</u>
       Ilana S. Wilenkin (P61710)
       Plaintiff's attorney
       30300 Northwestern Highway, Suite 108
       Farmington Hills, MI 48334-3255
       (248) 932-3505; Fax (248) 932-1734
       ilana@lawsmf.com

Date:  December 21, 2021